# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT PIKEVILLE

| | |
|---|---|
| **THOMAS R. BACK,** *Individually and on behalf of all other similarly situated states,* <br><br> **Plaintiff,** <br><br> V. <br><br> **CHESAPEAKE OPERATING, LLC and CHESAPEAKE APPALACHIA, LLC,** <br><br> **Defendant.** | **CIVIL ACTION NO. 7:16-192-KKC** <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

The defendants move (DE 41) to dismiss the plaintiff's complaint. For the following reasons, the motion will be granted in part and denied in part.

### I.  Background

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), like the one filed by the defendants here, the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).

According to the complaint, the plaintiff, Thomas Back, owns an interest in the oil and gas estate of property located in Knott County, Kentucky. (DE 40, Complaint ¶ 2.) He leases that estate to the defendants (collectively, "Chesapeake"), which grants Chesapeake the right to produce and sell the oil and gas. In return, Chesapeake agrees to pay royalties to Back.

In the complaint, Back asserts Chesapeake has paid him fewer royalties than the parties agreed to. He asserts that Chesapeake has done this in two ways. First, he asserts the leases require Chesapeake to "pay royalties based on the sales price of gas at the time it is sold." (DE 40, Complaint ¶ 14.) Back alleges thatChesapeake calculated his royalties "based on a sales price that is materially less than the price at which Chesapeake sold the gas." (DE 40, Complaint ¶ 3.) More specifically, Back asserts that, in late 2007, Chesapeake sold a large amount of natural gas (208 billion cubic feet) to affiliates of certain investment banks at a sales price of approximately $1.1 billion or $5.27 per thousand cubic feet. (DE 40, Complaint ¶¶ 17, 18.)

Nevertheless, Back alleges, even after the sale, Chesapeake calculated the royalties it paid to him "as if no such sale had ever occurred." (DE 40, Complaint ¶¶ 15, 16.) Later, Back alleges, Chesapeake paid him royalties on the gas sold to the banks but calculated the royalties based on a lower sales price than what the banks paid it. (DE 40, Complaint ¶ 18.)

The second way that Back alleges Chesapeake paid him fewer royalties than he was entitled to was by deducting more expenses from the sales price than it was permitted to under the leases. Back asserts that the leases permit Chesapeake to deduct "the reasonable expenses that it actually incurred in preparing the oil and gas for sale." (DE 40, Complaint ¶ 19.) Back alleges that Chesapeake has, however, deducted unreasonable expenses or expenses that it did not actually incur from the royalties it paid him. (DE 40, Complaint ¶ 4.)

Back asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. In addition, he seeks an accounting from Chesapeake of the manner by which his royalty payments were calculated. Chesapeake moves to dismiss all of these claims.

II.   Analysis

A.   Breach of Contract

As to Back's breach-of-contract claim, Chesapeake argues it must be dismissed because there are two relevant leases between it and Back and neither requires it to pay royalties based on sales price at all. Nor, Chesapeake argues, do the leases allow it to deduct expenses from the royalties owed. Instead, Chesapeake argues, the leases require it to pay a flat royalty rate of 12 cents per 1,000 cubic feet for 1/8 of the gas produced from the wells. Chesapeake attaches two leases – one dated 1940; the other dated 1954 – that support its assertions. (DE 41-2, Leases.)

In response, Back concedes that the written leases require Chesapeake to pay a flat royalty rate. He argues, however, that the parties have modified the agreement by their conduct over the years. Back asserts that, from the date Chesapeake became lessee, it has paid royalties equal to 1/8 of the sales price it receives for the natural gas, minus expenses incurred. He states that Chesapeake became the lessee more than a decade ago, when it purchased the original lessee, and that it has consistently represented in its statements to him that it calculated the royalties based on the sales price minus expenses, not at a flat rate.

Under Kentucky law, "[a] written contract can be modified or abandoned by a subsequent oral agreement, [but] the proof to support such an assertion must be clear and convincing." *Dalton v. Mullins*, 293 S.W.2d 470, 475 (Ky.1956). In his complaint, however, Back does not allege that the leases have been modified by the conduct of the parties. Instead, he alleges "Under [the] leases, Chesapeake is to pay royalties based on the sales price of the gas at the time it is sold." (DE 40, Complaint ¶ 14.) Likewise, he alleges "Under the leases, Chesapeake generally is permitted to

deduct the reasonable expenses that it actually incurred in preparing the oil and gas for sale." (DE 40, Complaint ¶ 19.)

In the complaint, Back never mentions that the written leases have been modified by the parties' conduct or his theory of the manner by which they have been modified. Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007). The complaint, as written, does not provide the defendants with fair notice of Back's claim. It does not mention that crucial payment terms of the leases have been modified by the parties' conduct. Accordingly, the complaint does not set forth sufficient facts to state a claim that is plausible on its face that Chesapeake breached the allegedly modified payment terms. *Id.* at 570.

Nevertheless, the Court will permit Back to amend his complaint to properly plead a breach-of-contract claim with all the information necessary so that Chesapeake may formulate a response. As will be explained below, even if the Court were to dismiss the breach-of-contract claim, this action will continue. Back has made sufficient allegations to assert a fraud claim against Chesapeake based upon the alleged representations made in the royalty statements. Further, no discovery has taken place and no motions for summary judgment have been filed. Thus, Chesapeake will not be significantly prejudiced by permitting an amended complaint.

Considering these factors and the Court's preference for resolving matters on their merits when possible, the Court will permit Back to amend its complaint to reassert the factual basis for its breach-of-contract claim.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Chesapeake also moves to dismiss Back's claim for breach of the implied covenant of good faith and fair dealing. Chesapeake recognizes that, under Kentucky law, every contract is construed to contain an implied covenant of good faith and fair dealing. *Ranier v. Mount Sterling Nat. Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Under this covenant, contracting parties are deemed to have promised to "refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 636 (E.D. Ky. 2012) (quoting *Slater v. Pearle Vision Center, Inc.*, 546 A.2d 676, 679 (Pa.Super.Ct.1988)). Likewise, the parties are deemed to have agreed to "do everything necessary" to carry out their obligations under the contract, *Ranier*, 812 S.W. 2d at 156, and to "any promises which a reasonable person . . . would be justified in understanding were included" in the parties' agreement. *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012).

"In order to show a violation of the implied covenant of good faith and fair dealing, a showing of breach of contract is ordinarily not required; rather, the party asserting the violation must 'provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" *O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457–58 (6th Cir. 2005).

Chesapeake argues that Back has failed to allege a claim for breach of the implied covenant because the claim relies on the same conduct as Back's breach-of-contract claim. In the complaint, Back alleges that Chesapeake breached the implied covenant in the same two ways it alleges that Chesapeake breached the express terms of the agreement: by "using a sales price for royalty calculations that is

materially less than the amount at which Chesapeake in fact sold the gas" and by "deducting expenses that are unreasonable and/or unincurred." (DE 40, Complaint, ¶¶ 48, 49.)

Back does not allege that Chesapeake engaged in conduct that was impliedly prohibited under the parties' agreement. He does not allege that Chesapeake engaged in conduct that, while not expressly prohibited under the contract, would destroy or injure his right to receive the royalties as the parties agreed. Back does not allege that Chesapeake failed to do something impliedly necessary under the contract to ensure that Back received the proper royalties. Back does not allege that Chesapeake violated any implied promises that he reasonably believed were part of the parties' agreement. Instead, Back alleges that Chesapeake violated its express obligations to pay him the royalties it owed him. Accordingly, Back has not alleged a claim for breach of the implied covenant of good faith and fair dealing and this claim must be dismissed.

### C. Fraud

Back's fraud claim is based upon the royalty statements Chesapeake sent him. Back asserts that the statements repeatedly understated the sales price it received for the gas and overstated the amount of expenses incurred in producing the gas. Chesapeake argues that Back's fraud claim must be dismissed because the leases between the parties provide for a flat royalty rate and, thus, any misrepresentations in the royalty statements are irrelevant.

As already discussed, Back argues that the parties modified the leases by their conduct. Further, if Chesapeake made representations in the royalty statements about the royalties it paid to Back and how it calculated the royalties,

those representations could form the basis for a fraud claim, regardless of what the leases provide.

Federal Rules of Civil Procedure 9(b) provides that when a plaintiff alleges fraud, he must state "with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). This rule requires, "at a minimum," that the plaintiff "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex LP.*, 2 F.3d 157, 161-162 (6th Cir. 1993) (citations omitted).

The test for compliance with Rule 9(b) is whether the complaint provides the defendant with "fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Building Company, et al. v. Ameritrust Company, N.A., et al.*, 848 F.2d 674, 679 (6th Cir. 1988). In *Michaels Building*, the Sixth Circuit found a complaint was sufficiently detailed under Rule 9(b) because the "fraud count specifies the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud and the injury resulting from the fraud." *Id.* at 679.

Back has met those requirements here. He asserts that Chesapeake represented in the royalty statements that that it calculated the royalties due "based on the sales price of the gas at the time it was sold." (DE 40, Complaint, ¶14). Nevertheless, he alleges that, from 2007 – when Chesapeake sold a large volume of natural gas to the investment banks – to the present time, Chesapeake has represented to Back in the royalty statements that it received a lower sales price for

7

the gas than it actually received. He also asserts that the royalty statements represented that Chesapeake calculated the royalties owed Back by deducting certain expenses. Back alleges, however, that Chesapeake "improperly inflated" those expenses to reduce the royalties paid to Back. (DE 40, Complaint, ¶22). He alleges that the misrepresentations were done intentionally and knowingly. (DE 40, Complaint, ¶22.) He further alleges that he relied on the statements and was damaged by accepting lower royalty payments than he should have. (DE 40, Complaint, ¶23).

These allegations provide Chesapeake with sufficient notice of the substance of Back's fraud claim to prepare a responsive pleading. Accordingly, the motion to dismiss this claim will be denied.

**D.     Accounting**

With his complaint, Back also seeks a court order requiring Chesapeake to provide him a "detailed statement. . . of the receipts and payments affecting the calculation of their royalty payments." (DE 40, Complaint ¶ 67.) Back requests the accounting only if he is unable to obtain this information during discovery. Accordingly, Chesapeake's motion to dismiss this claim will be denied as premature. Chesapeake argues that information regarding the basis by which it calculated royalties owed to Back is irrelevant because the leases provide for only a flat royalty rate. Again, however, Back alleges that the parties modified those leases in a manner that makes relevant the sales price for the gas and the actual expenses incurred by Chesapeake.

### III.    Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Chesapeake's motion to dismiss (DE 41) is GRANTED in part and DENIED in part as follows:

    A) the motion is GRANTED as to Back's claim for breach of the implied covenant of good faith and fair dealing and that claim is DISMISSED;

    B) the motion is DENIED as to Back's claims for breach of contract and fraud and as to Back's request for an accounting; and

2) Back may file an amended complaint restating his breach-of contract claim consistent with this opinion. Any such amended complaint MUST BE FILED within 14 days of the entry date of this order. If no such amended complaint is filed, the Court will dismiss the breach-of-contract claim.

Dated February 6, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY