Eastern District of Kentucky
**F I L E D**
AUG 27 2018
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

**THOMAS R. BACK,** *Individually and on behalf of all other similarly situated states,*

**Plaintiff,**

V.

**CHESAPEAKE OPERATING, LLC and CHESAPEAKE APPALACHIA, LLC,**

**Defendant.**

CIVIL ACTION NO. 7:16-192-KKC

**OPINION AND ORDER**

\*\*\* \*\*\* \*\*\*

The defendants move (DE 54) to dismiss the plaintiff's complaint. For the following reasons, the motion will be granted.

**I.  Background**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), like the one filed by the defendants here, the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).

According to the complaint, the plaintiff, Thomas Back, owns an interest in the oil and gas estate of property located in Knott County, Kentucky. (DE 51, Complaint ¶ 2.) He leases that estate to the defendants (collectively, "Chesapeake"), which grants Chesapeake the right to produce and sell the oil and gas. In return, Chesapeake agrees to pay royalties to Back.

Back alleges that, pursuant to the written lease agreement between Chesapeake's predecessor in interest and Back's ancestors, Chesapeake's predecessor was required to pay a royalty for 1/8 of the natural gas extracted from the land at issue at a fixed rate of $0.12/mcf (thousand cubic feet) for as long as the land produced gas. (DE 51, Complaint ¶ 13; DE 54-2, Lease.) However, Back alleges, "Long ago, before Chesapeake acquired an interest in Mr. Back's natural gas estate, Chesapeake's predecessors determined and agreed to pay Mr. Back or his ancestors not on the basis of the fixed per-mcf rate set forth in the written contract." Instead, Chesapeake's predecessors "determined and agreed" to pay the lessor "1/8 of the price a[t] which Chesapeake sells the gas (typically the market price), less actual and reasonable expenses incurred in making the gas marketable." (DE 51, Complaint ¶ 14.) Back alleges that, under this oral agreement, Chesapeake must pay royalties based on the sales price of gas at the time it is sold. (DE 51, Complaint ¶ 15.)

Back asserts Chesapeake has paid him fewer royalties than the parties agreed to. More specifically, Back asserts that, in late 2007, Chesapeake sold a large amount of natural gas (208 billion cubic feet) to affiliates of certain investment banks at a sales price of approximately $1.1 billion or $5.27/mcf. (DE 51, Complaint ¶¶ 16, 17, 18.)

Back alleges that, after the sale, Chesapeake calculated the royalties it paid to him and other lessees "as if no such sale had ever occurred." (DE 51, Complaint ¶ 18.) Later, Back alleges, Chesapeake paid him royalties on the gas sold to the banks but calculated the royalties based on a lower sales price than what the banks paid it. (DE 51, Complaint ¶ 19.)

2

Back also alleges that Chesapeake has sent him regular royalty statements that contain intentional and knowing misrepresentations because they "reflect improperly inflated expenses and improperly deflated royalty payments." (DE 51, Complaint ¶ 23.)

Back asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. In addition, he seeks an accounting from Chesapeake of the manner by which his royalty payments were calculated. By prior opinion (DE 50), the Court dismissed the claim for breach of the implied covenant of good faith and fair dealing. Chesapeake has filed a motion, which it captions a "motion for partial dismissal." Nevertheless, the motion appears to request dismissal of all the remaining claims.

## II. Analysis

As to Back's breach-of-contract claim, Chesapeake argues it must be dismissed because Back seeks to "reform" the lease, but his complaint fails to assert a claim for "reformation." This argument fails because Back does not seek a "reformation" of the lease.

Reformation is the proper remedy "when an instrument fails to embody the actual agreement made or transaction determined upon by the parties thereto . . . ." *Lindenberger v. Rowland*, 166 S.W. 242, 244 (Ky. 1914). In order to establish a claim for reformation, a party to a contract must prove that the agreement sought to be corrected, "fail[s] to express the real agreement or transaction because of mistake common to both parties, or because of mistake on one side and fraud or inequitable conduct on the other." *Id.* "In pleading a cause in reformation, it is necessary to allege in clear and concise language the grounds of reformation, the agreement actually made, and the agreement which the parties intended to make." *Stark v.*

3

*Suttle*, 205 S.W. 673, 673 (Ky. 1918). "Reformation of a written instrument is available where, because of a mutual mistake of fact, the instrument fails to express the real agreement between the parties." 27 Williston on Contracts § 70:20 (4th ed.)

> The equitable remedy of reformation will not make a new agreement for the parties but, instead, will establish and perpetuate the true, existing contract by making the instrument express the real intent of the parties. Reformation is only available to correct a mutual mistake in order to conform an agreement to the original intent of the parties.

27 Williston on Contracts § 70:20 (4th ed.)

"The purpose of reformation by a court of equity is to make an erroneous instrument express correctly the real agreement between the parties." *Id.* "Equity should never decree reformation of a written contract except upon clear, satisfactory and convincing evidence of the real agreement of the parties and of the fact that the instrument, through mistake, does not embody that understanding." *Id.*

Back does not argue that the written lease agreement fails to embody the true agreement of the parties at the time it was made. There is no dispute that the written lease requires that Chesapeake pay a flat royalty rate of 12 cents per 1,000 cubic feet for 1/8 of the gas produced from the wells. Back does not allege that the parties did not intend to agree to that price. Instead, Back argues that, some time after the lease agreement was made, the lessee "determined and agreed" to pay the lessors 1/8 of the price at which the lessee sells the gas less actual and reasonable expenses incurred in making the gas marketable. (DE 51, Response at 4.) Thus, he argues the parties modified the written lease agreement either by oral agreement or by their conduct over the years.

There is a problem with this argument that was not raised in the motions to dismiss. "The conveyance or assignment of a working interest in an oil and gas lease

4

constitutes an interest in real estate within the meaning of the statute of frauds." *Owen v. Dayson*, 562 S.W.2d 647, 648 (Ky. Ct. App. 1977). *See also K. Petroleum, Inc. v. A.D.I.D. Corp.*, No. CIV. 11-20-GFVT, 2012 WL 1084674, at *3 (E.D. Ky. Mar. 30, 2012). Kentucky's statute of frauds prohibits any action based "upon any contract for the sale of real estate, or any lease thereof for longer than one year. . . Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent." KRS §371.010(6).

Pursuant to the statute of frauds, "an oil or gas lease is an interest in land, and must be in writing . . . ." *K. Petroleum, Inc. v. Vanderpool*, No. 2012-CA-000859-MR, 2014 WL 1881913, at *2 (Ky. Ct. App. May 9, 2014) (quoting *Kash v. United Star Oil Co.*, 233 S.W. 898, 899 (1921)). This is because "oil and gas being minerals are a part of the realty." *Prichard Coal Co. v. Fields*, 284 S.W. 1023, 1023 (Ky. 1926). Thus, "a lease giving to the lessee the right to explore certain lands and remove therefrom the oil and gas is a contract for the transfer and sale of an interest in the lands, and must be in writing . . . ." *Id.*

Here, the lease agreement is in writing as required by the statute of frauds. Any subsequent modifications to the lease that materially affect the lease's terms, must also be in writing. *Fontaine Tr. v. P & J Res., Inc.*, No. CIV. A. 08-220-ART, 2010 WL 1529399, at *3 (E.D. Ky. Apr. 15, 2010) (citing *Farmers Bank and Trust Co. of Georgetown Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 8 (Ky.2005) ("If the contract is required to be in writing, evidence will not be admitted to prove a subsequent parole agreement which materially modifies the writing; that is, if the subsequent agreement itself is within the statute of frauds, and of a nature required

5

by law to be in writing.") *See also Gunderson v. Friden, Inc.*, 372 F.2d 303, 307 (6th Cir. 1967) ("Appellant does not dispute the necessity of his lease being in writing under K.R.S. 371.010(6). Since this is true, the modification thereof must also satisfy the requirements of the statute, to-wit: It must contain all the essential elements or material parts of the contract. *Purcell v. Campbell*, 261 Ky. 644, 88 S.W.2d 670 (1935)").

Any modification of the royalty payment owed by the lessee would be material. *Watson by & through Watson v. Jagoe Homes, Inc.*, No. 2016-CA-001897-MR, 2017 WL 6398289, at *6 (Ky. Ct. App. Dec. 15, 2017) (citing Black's Law Dictionary 991–92 (7th ed. 1999) (defining "material terms" as "Contractual provisions dealing with significant issues such as subject matter, price, payment terms, quantity, quality, duration, or the work to be done.")

Moreover, the lease contains a clause stating, "[i]t is expressly understood between the parties that this instrument embraces the entire understanding and contract between the parties and any agreements or representations verbal or written, made by any person on behalf of either the Lessor or the Lessee not contained in this lease are unauthorized and do not bind the parties." (DE 54-2, Lease.)

Back does not ask the Court to find the lease unconscionable. Instead, he argues that it has been modified by the parties. Any argument by Back that the written lease agreement has been modified by an oral agreement between the parties fails. For the same reason, any argument by Back that the original lease agreement has been modified by a course of conduct by which Chesapeake paid royalty rates different than those set forth in the written agreement also fails.

6

Further, it is true that "[i[t is an accepted rule of law that where there is any ambiguity in the contract with respect to the provisions relating to royalty payments, the conduct of the parties over the years is entitled to great weight." *Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, No. CIV. 07-30-ART, 2008 WL 818995, at *3 (E.D. Ky. Mar. 25, 2008) (quoting *Lafitte Co. v. United Fuel Gas Co.*, 177 F.Supp. 52, 59 (E.D.Ky.1959)). There is no argument here, however, that the written lease agreement is ambiguous.

The agreement expressly sets forth the rate that the lessee must pay the lessor. Accordingly, the agreement's terms cannot be modified by the parties' conduct. "In the event a course of dealing between the parties and the express terms of the agreement cannot be reasonably construed as consistent with each other, the express terms of the agreement control the course of dealing." *Zorin Properties, LLC v. Denney*, No. 2009-CA-002383-MR, 2012 WL 751978, at *6 (Ky. Ct. App. Mar. 9, 2012) (quoting *Catron v. Citizens Union Bank*, 229 S.W.3d 54, 57 (Ky.App.2006)).

Back's breach of contract claim must be dismissed.

As to Back's fraud claim, this claim is based upon the royalty statements Chesapeake sent to Back. He asserts that the statements repeatedly "misrepresented the amount of royalty payments owed. . . by understating the sales price of gas and overstating the amount of expense incurred." (DE 51, Complaint ¶ 58.) The lease agreement provides for a flat royalty rate. Accordingly, even if the royalty statements misrepresented the sales price of the gas and the expenses incurred in producing it, Back could not have suffered any injury. Nor could he have relied on those alleged misrepresentations to his detriment. The sales price and expenses are irrelevant to the royalty owed Back.

That leaves Back's claim for an accounting. Back seeks information regarding the manner by which Chesapeake calculated royalty payments. Chesapeake must calculate royalty payments as provided under the written lease agreement. Because Back does not assert a claim based on the written agreement, his claim for an accounting must also be dismissed.

### III. Conclusion

For all these reasons, the Court hereby ORDERS that Chesapeake's motion to dismiss (DE 54) is GRANTED and this action will be dismissed and stricken from the Court's active docket. Back's motion for a scheduling conference (DE 57) is DENIED as moot.

August 27, 2018



Signed By:
Karen K. Caldwell
United States District Judge