UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| **THOMAS R. BACK,** *Individually and on behalf of all other similarly situated states,* | **CIVIL ACTION NO. 7:16-192-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **CHESAPEAKE OPERATING, LLC and CHESAPEAKE APPALACHIA, LLC,** | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on the defendants' motions to bifurcate discovery (DE 79) and for leave to file a counterclaim (DE 81).

## I.  Background

According to the complaint, the plaintiff, Thomas Back, owns an interest in the oil and gas estate of property located in Knott County, Kentucky. (DE 51, Complaint ¶ 2.) He leased that estate to the defendants (collectively, "Chesapeake"), granting Chesapeake the right to produce and sell the oil and gas. In return, Chesapeake agreed to pay royalties to Back.

Pursuant to the written lease agreement between Chesapeake's predecessor in interest and Back's ancestors, Chesapeake's predecessor was required to pay the lessors a royalty for 1/8 of the natural gas extracted from the land at issue at a fixed rate of $0.12/mcf (thousand cubic feet) for as long as the land produced gas. (DE 51, Complaint

¶ 13; DE 54-2, Lease.) However, Back alleges, "Long ago, before Chesapeake acquired an interest in Mr. Back's natural gas estate, Chesapeake's predecessors determined and agreed to pay Mr. Back or his ancestors not on the basis of the fixed per-mcf rate set forth in the written contract." Instead, Chesapeake's predecessors "determined and agreed" to pay the lessors "1/8 of the price a[t] which Chesapeake sells the gas (typically the market price), less actual and reasonable expenses incurred in making the gas marketable." (DE 51, Complaint ¶ 14.) Back alleges that, under this agreement, Chesapeake was required to pay royalties based on the sales price of gas at the time it is sold. (DE 51, Complaint ¶ 15.)

Back asserts Chesapeake paid him fewer royalties than the parties agreed to. More specifically, Back asserts that, in late 2007, Chesapeake sold a large amount of natural gas (208 billion cubic feet) to affiliates of certain investment banks at a sales price of approximately $1.1 billion or $5.27/mcf. (DE 51, Complaint ¶¶ 16, 17, 18.)  Back alleges that the sale consisted of gas from wells located on the property of thousands of lessors, including Back. He alleges that Chesapeake agreed to give the banks scheduled quantities of gas until 2022. (DE 51, Complaint ¶¶ 16, 17.) The parties have referred to this $1.1 billion transaction as a Volumetric Production Payment ("VPP").

Back alleges that, after the sale, Chesapeake calculated the royalties it paid to him and other lessees "as if no such sale had ever occurred." (DE 51, Complaint ¶ 18.)  Later, Back alleges, Chesapeake paid him royalties on the gas sold to the banks but calculated the royalties based on a lower sales price than the $5.27/mcf the banks paid for it. (DE 51, Complaint ¶ 19.) For example, Back alleges that Chespeake frequently calculated the royalties it paid him based on a sales price of less than $3.00/mcf.

the agreements have been modified, with Chesapeake treating

the class of Kentucky landowners here as all having the same agreement calling for

payment of 1/8 of the price at which Chesapeake sells the gas less actual and reasonable

expenses.

Back alleges that, under the lease agreement, Chesapeake is permitted to deduct

"reasonable expenses that it actually incurred in preparing the oil and gas for sale." (DE

51, Complaint, ¶ 20.) Back alleges, however, that Chesapeake has "systematically

deducted from its royalty payments" expenses that were not reasonable or not actually

incurred. (DE 51, Complaint, ¶ 21.) Back alleges that Chesapeake sent him regular

royalty statements that contained intentional and knowing misrepresentations because

they "reflect improperly inflated expenses and improperly deflated royalty payments."

(DE 51, Complaint ¶ 23.)

Back asserts claims of breach of contract, breach of the implied covenant of good

faith and fair dealing, and fraud. In addition, he seeks an accounting from Chesapeake of

the manner by which his royalty payments were calculated. By prior opinion (DE 50), the

Court dismissed the claim for breach of the implied covenant of good faith and fair

dealing.

Back seeks to bring this action on behalf of himself and "all persons entitled to

royalties from Chesapeake relating to real property located within the Commonwealth of

Kentucky at any point after April 24, 2009" with exclusions for governmental entities and

Chesapeake's affiliates, employees, and agents. (DE 51, Complaint, ¶ 34.) Back asserts

there are more than 1,000 members of the proposed class. (DE 51, Complaint, ¶ 35.)

Chesapeake now asks the Court to permit it file a counterclaim and to bifurcate class and merits discovery, with discovery on the issue of class certification to proceed discovery on the merits of Back's claims.

## II. Analysis

### A.     Motion to file a counterclaim

Chesapeake moves for leave to amend its answer to file a counterclaim. The proposed counterclaim would ask this Court to issue a declaratory judgment that Back's lease has not been modified.

Whether a party should be granted leave to amend an answer to add a counterclaim is governed by Rule 15. *See* Fed. R. Civ. P. 13 advisory committee notes (2009). Pursuant to Rule 15(a)(2), the Court should "freely" give parties leave to amend their pleadings "when justice so requires." Nevertheless, a motion to amend a complaint should be denied if the amendment would be "futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). And a proposed amendment is futile if it "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Back argues that the Court should deny Chesapeake's motion to amend as futile because the proposed counterclaim fails to meet the requirements of 28 U.S.C. § 2201 and *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Section 2201 simply grants district courts the discretion to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). *Grand Trunk* sets forth the

4

factors the Court should consider in determining whether a declaratory judgment is

appropriate in a particular action:

> (1)  whether the declaratory action would settle the
>       controversy;
>
> (2)  whether the declaratory action would serve a useful
>       purpose in clarifying the legal relations in issue;
>
> (3)  whether the declaratory remedy is being used merely
>       for the purpose of "procedural fencing" or "to provide
>       an arena for a race for res judicata;"
>
> (4)  whether the use of a declaratory action would increase
>       friction between our federal and state courts and
>       improperly encroach upon state jurisdiction; and
>
> (5)  whether there is an alternative remedy which is better
>       or more effective.

*Grand Trunk*, 746 F.2d at 326.

Back does not argue that Chesapeake asserts the counterclaim for procedural

fencing or for "res judicata" purposes. Nor does he argue that the proposed declaratory

action would cause any friction with state courts. Thus, the Court finds factors three and

four weigh in favor of permitting the counterclaim. The remaining factors, however,

weigh in favor of finding that the declaratory action is inappropriate in this action.

The requested declaration would not necessarily settle this controversy.

Chesapeake asks that the Court declare that Back's lease was never amended and that the

terms of the written lease still govern. If the lease was not amended, then Back's breach-

of-contract claim would fail. If, however, the Court were to determine that the lease was

amended, then Back's claims would continue and there would still be issues to litigate.

Moreover, the requested declaration would not be useful in clarifying the issues in

this dispute. This is because "when a counterclaim merely restates the issues as a 'mirror

image' to the complaint, the counterclaim serves no purpose." *Federal Deposit Ins. Corp.*
*v. Project Development Corp.*, 819 F.2d 289, 1987 WL 37488, at *3 (6th Cir. 1987)
"[T]o the extent that a declaratory judgment duplicated the result of another claim, such a
judgment would not serve a useful purpose in clarifying the legal relations at issue."
*Kreinberg v. Dow Chem. Co.*, No. 07-13235-BC, 2007 WL 2782060, at *8 (E.D. Mich.
Sept. 24, 2007). A declaratory judgment is not appropriate if resolution of a claim made
in the complaint would entirely dispose of the issue involved in the requested declaration.
*Stryker Corp. v. Ridgeway*, No. 1: 13-CV-1066, 2014 WL 3704284, at *1 (W.D. Mich.
July 24, 2014).

Both parties agree that Back's breach-of-contract claim depends upon his claim
that the lease has been modified to require that Cheseapeake pay royalties based on the
"price a[t] which Chesapeake sells the gas (typically the market price), less actual and
reasonable expenses incurred in making the gas marketable." (DE 51, Complaint, ¶ 14.)
The Sixth Circuit agreed with this analysis, finding that the issue on Back's claims is
whether, "at some point in the decades that followed" the making of the original lease
agreement, "Chesapeake's predecessor agreed to pay a royalty that was a percentage of
the gas's market price, rather than a flat rate." *Back v. Chesapeake Appalachia, L.L.C.*,
773 F. App'x 294, 296 (6th Cir. 2019). In the Sixth Circuit's view, the amendment of the
lease can be proved by the royalty statements Chesapeake sent Back and the royalty
checks endorsed by Back. *Id.*

Back asserts that, because the modification of the leases is crucial to his claims,
the counterclaim "adds no new issues" to this litigation. Instead, it merely "restates
issues" already raised in Back's claim and, thus, "serves no purpose." (DE 84, Response

6

at 2.) Back agrees with Chesapeake's assertion that the proposed counterclaim seeks a declaration that "is central to the entire case." (DE 84, Response at 3.) Back agrees that his claims "already have put squarely at issue" whether the lease was modified. (DE 84, Response at 3.) Because resolution of Back's breach-of-contract claim will necessarily require a resolution of the very issue that the counterclaim asks this Court to resolve, the proposed counterclaim would serve no useful purpose in this litigation.

In addition, Chesapeake has an alternative manner of asking the Court to determine whether the leases have been modified. Back's main argument in support of the proposed counterclaim is that Back has avoided the issue of when and how the lease was amended. Chesapeake argues that Back has "no intention" of addressing these issues. (DE 85, Reply at 2.) But Chesapeake does not need to file a counterclaim to force Back to address these issues that both parties agree are crucial to his claims. Chesapeake may move for summary judgment on Back's breach-of-contract claim. Back would need to respond to such a claim with proof that the lease was amended. Pursuant to the Sixth Circuit's opinion, such proof would consist of royalty statements and endorsed royalty checks.

This manner of resolving whether the lease has been amended is moderately better than a declaratory action. Because the Court will necessarily address the issue raised in the declaratory action in ruling on the merits of Back's claims, there is no reason for the parties to spend time and resources litigating the counterclaim.

Considering all the factors set forth in *Grand Trunk*, the Court finds that a declaratory judgment is not the appropriate manner for resolving the issue of whether

Back's lease was amended. Accordingly, Chesapeake's motion for leave to file a counterclaim will be denied.

### B.    Motion to bifurcate merits and class discovery

Both parties agree that the Court should decide the class certification as soon as possible. *See* Fed. R. Civ. P. 23(c)(1)(A) (requiring that the Court decides the class certification issue at "an early practicable time.") They differ on the best way to achieve that outcome.

Chesapeake asks the Court to bifurcate discovery with the first phase of discovery involving only issues relating to class certification. The second phase of discovery would involve only the merits. Presumably, under this approach, Back would file a motion for class certification at the end of the class discovery period. Only after the Court resolves that motion would the parties embark on merits discovery. Back, on the other hand, argues that the parties should engage in discovery on the merits and class certification simultaneously, and that the Court should set a relatively early deadline for him to file the motion for class certification.

Chesapeake proposes that, during the class-certification stage of discovery, the parties would be limited to discovery on "only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied." (DE 79-1, Mem. at 4.) Those prerequisites are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Chesapeake argues that conducting class discovery before merits discovery will "conserve judicial resources and avoid the waste of spending substantial time and money on discovery that will not be necessary if certification is denied." (DE 79-1, Mem. at 5.) As Back points out (DE 83, Mem. at 13, n.5), however, the only discovery that Chesapeake identifies as potentially unnecessary if class discovery precedes merits discovery are the "thousands of leases" with the proposed class members. (DE 79-1, Mem. at 5.) It argues that, if the Court should deny class certification at the end of class discovery, then merits-based discovery will involve only the modification of Back's lease and the calculation of his royalties, not the leases and royalties of thousands of proposed class members.

The problem with this, however, is that both parties agree that the terms and treatment of the leases with the proposed class members are critical issues for class certification. Chesapeake argues that Back cannot meet the requirements of Rule 23 because there are too few leases like his. Chesapeake identifies "the relevant question for class certification" as "whether Back is an adequate class representative and whether common questions predominate over individual ones – for example, whether there are other lessors with Leases similar to Back's and whether Defendants take the same deductions from similarly-situated lessors." (DE 79-1, Mem. at 6.) The Court is uncertain how these issues can be resolved without information regarding the terms of the leases of the proposed class members.

In support of its argument that the leases are too dissimilar to support a class, Chesapeake relies on an affidavit filed by Chesapeake employee Sam Straley in a 2007

case. Chesapeake asserts that the affidavit proves that the leases that permit it to operate wells in Kentucky had "different royalty calculations and different deductions" and that "[n]ot all leases were treated the same with regard to deductions for gathering, processing and/or taxes." (DE 79-1, Memo. at 6.) In any discovery related to class certification, Back will most certainly request documents relevant to Straley's assertions, namely the leases of the proposed class members, including any amendments. These would presumably be the documents that spell out how royalties are to be calculated and the appropriate deductions.

Indeed, in a December 5, 2016 letter to Back, Chesapeake proposed that class discovery in this action would involve information that would enable Back to "test" Straley's conclusions which, according to Chesapeake, would include "documents identifying the manner in which gathering deductions are determined." (DE 83-2, Dec. 5, 2016 Letter.) Such documents would seem to necessarily include the leases of the proposed class members.

In its reply brief, Chesapeake argues that it could simply produce "sample" leases and royalty statements during class discovery. (DE 86, Reply at 3.) Because this argument was made in Chesapeake's reply brief, Back has not had an opportunity to respond to it. Chesapeake does not explain why the production of only a sample of leases and royalty statements will be sufficient for purposes of determining commonality, numerosity, and the other Rule 23 prerequisites. Accordingly, the Court is unable to conclude that proceeding with class discovery before merits discovery would permit Chesapeake to produce only sample documents in lieu of the actual leases.

Moreover, in determining the efficiencies of proceeding with class discovery before merits discovery, the Court is concerned about causing a new source of contention between the parties. Bifurcation could well lead to a spate of disputes about whether information requested during discovery goes to the merits or the class issue. Resolving these disputes will take the time and other resources of the parties and the Court. This is a particular danger where, as here, there appears to be a considerable overlap between information relevant to whether a class should be certified and information relevant to the merits of this action. The terms of the leases and how Chesapeake calculated deductions and royalties would be relevant not only to the merits of Back's claims but also to commonality, typicality, and numerosity.

Chesapeake argues that merits discovery should follow class discovery so that it can conduct merits discovery of class members after the class has been defined (if one is certified). It argues that it should not have to take merits discovery of class members before the class is even defined. But it argues that Back "may well object" to it taking discovery from potential class members prior to class certification. (DE 79-1, Mem. at 5.) If these problems should arise, the Court could permit appropriate limited merits discovery of individual class members after any class has been defined.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Chesapeake's motion to bifurcate discovery (DE 79) is DENIED;

2) Chesapeake's motion for leave to file a counterclaim (DE 81) is DENIED; and

3) Pursuant to Rules 16 and 23, the Court will issue an Order for Meeting and Report, which will require the parties to submit a joint proposed schedule for this action. The proposed schedule must be consistent with this opinion.

DATED:  May 19, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY